IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-01407-LTB-KLM

DENVER HEALTH AND HOSPITAL AUTHORITY,

       Plaintiff,

v.

BEVERAGE DISTRIBUTORS COMPANY, LLC, a Colorado limited liability company;
A PLAN DESIGNED TO PROVIDE SECURITY FOR EMPLOYEES OF BEVERAGE
DISTRIBUTORS COMPANY, LLC; and
PRINCIPAL LIFE INSURANCE COMPANY,

       Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

       This matter is before me on three motions.  The first is Defendant Principal Life Insurance

Company's ("Principal"), Motion to Dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P.

12(b)(6)  **[Docs # 5 and 6]**.  The second is Plaintiff Denver Health and Hospital Authority's

("DHHA"), Motion for Leave to Amend Complaint pursuant to Fed. R. Civ. P. 15(a)(2) **[Doc # 31]**.

The third is the Motion for Judgement on the Pleadings **[Doc # 34]**, filed jointly by Beverage

Distributors Company, LLC ("Beverage"), and A Plan Designed to Provide Security for Employees

of Beverage Distributors Company, LLC (the "Plan") (jointly, "Beverage Distributors").  After

consideration of the parties' arguments, and for the reasons stated herein, I DENY Principal's

motion in accordance with the instructions below; I GRANT DHHA's motion and accept its second

amended complaint tendered therewith; and I GRANT Beverage Distributors' motion.  These orders

leave the case to proceed with two claims and two defendants: (1) the negligent misrepresentation claim against Beverage, and (2) the promissory estoppel claim against Principal.

## I. Background

DHHA alleges the following in its first amended complaint.  DHHA is a political subdivision of the State of Colorado.  It operates the City and County of Denver's health system, including Denver Health Medical Center ("Denver Health").

Beverage is a Colorado limited liability company.  Beverage provides medical and other benefits to its full time, active duty employees and their dependents through the Plan.

The Plan is an employee welfare benefit plan pursuant to, and for the purposes of, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA").  Beverage is the Plan's Administrator.  The Plan does not identify who or what is the claims administrator, but it defines the term as "an entity authorized by the Plan Administrator to process claims for benefits under this plan."

Principal is a company authorized to conduct business in Colorado and was so conducting at all times pertinent to this lawsuit. One of its functions is to process claims under the Plan according to the Plan's provisions.

Junnapa Intarakamhang was a full time, active duty Beverage employee.  As such, she was a member under the Plan.  She had established a domestic partnership with Terrence Hood in 2006.  Together, they submitted an application for domestic partner coverage for Hood under the Plan on June 25, 2008.

On March 21, 2009, while Intarakamhang was a Plan member, Hood sustained severe and traumatic injuries in a motorcycle crash.  Paramedics rushed Hood to Denver Health where he would

receive lifesaving medical care and treatment for months.  On March 24, 2009, Denver Health solicited and received hospital preadmission authorization from Principal for Hood's hospital stay. Over the next several weeks, Principal repeatedly preauthorized additional days for Hood's stay. These authorizations led Denver Health to continue caring for Hood and to decline seeking a different third party payor. Hood was discharged on June 10, 2009.

 By letter dated May 14, 2009, Beverage advised Intarakamhang that coverage for Hood under the Plan had been rescinded because Hood "did not qualify for benefits . . . due to his marital status currently and at the time he certified the declaration of domestic partnership form[.]"  The information in Beverage's files did not support rescission.  Beverage never provided notice to Hood himself that it had rescinded his coverage under the Plan.  Nor did it return any premiums Hood paid for coverage.  The Plan does not provide for rescission of a member or covered dependent's coverage in the event of a misstatement in an application or under any other circumstances.

Principal later advised Denver Health by  letter that benefits were not payable for Hood's care because he was not a covered dependent under the Plan and that there was a "plan termination date of 06/20/2008."  Principal did not notify Hood directly of its determination that benefits were not payable for the charges incurred at Denver Health.

Hood incurred approximately $750,000 in medical bills for his treatment at Denver Health. He assigned his right to recover benefits under the Plan to Denver Health and thereby assigned them to DHHA.  DHHA alleges that the attempted rescission and refusal to pay covered benefits under the Plan were not substantially justified, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any allowed discretion, and were wrongful.

DHHA filed suit in state court on April 4, 2011.  On April 21, 2011, it filed its first amended complaint.  The first amended complaint asserted three causes of action.  First was a claim for benefits due and equitable relief under § 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (the "§ 1132(a)(1)(B) claim").  Second was that Principal unreasonably delayed and denied payment of Hood's claim in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116(a).  Third was promissory estoppel against Principal. Defendants removed the case to this Court on ERISA and federal question grounds pursuant to § 502(e) of ERISA, 29 U.S.C. § 1132(e), and 28 U.S.C. § 1331, respectively.

After removal, Principal filed its motion to dismiss. DHHA then filed its  motion for leave to amend its first amended complaint. Next came Beverage Distributors' motion for judgment on the pleadings.   In the interest of clarity, brevity, deciding only those issues that I must, and for the reasons explained below, I address the motions out of the order in which they were filed.  I begin with DHHA's motion, then turn to Principal's, and end with Beverage Distributors'.  As will be elucidated, this order of operations obviates much of Principal's motion but does not prejudice it.

## II. DHHA's Motion

DHHA's motion seeks leave to file a second amended complaint pursuant to Rule 15(a)(2). DHHA tendered that second amended complaint with its motion.  Its second amended complaint asserts a negligent misrepresentation claim against Beverage and clarifies that the § 1132(a)(1)(B) claim is asserted against only the Plan and not Principal.  I note that the second amended complaint also excludes the Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116(a) claim.  I infer from that material change that DHHA is withdrawing that claim.  To be clear, then, the second amended complaint asserts three claims: first, a § 1132(a)(1)(B) claim against the Plan; second, a negligent

misrepresentation claim against Beverage; and third, a promissory estoppel claim against Principal. For the reasons herein, I grant DHHA's motion and accept its second amended complaint.

### A. Rule 15(a)(2)

Rule 15 governs amendments to pleadings generally. *See* Fed. R. Civ. P. 15. "Except when an amendment is pleaded 'as a matter of course,' as defined by the rule, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.' " *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Courts "should freely grant leave when justice so requires." *Id*. The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted). Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). Granting leave to amend the pleadings pursuant to Rule 15(a) is within the court's wide discretion. *See Minter*, 451 F.3d at 1204 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)); *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999). Consequently, the trial court's decision will not be reversed "absent an abuse of discretion," which is when the decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Bylin*, 568 F.3d at 1229.

### B. Discussion

To begin, consonant with Rule 15(a)(2)'s language and purpose, my predilection is to grant DHHA's motion. *See* Fed. R. Civ. P. 15(a)(2); *see also Minter*, 451 F.3d at 1204. That affords "the

maximum opportunity for each claim to be decided on its merits rather than on procedural niceties"–the rule's purpose. *Minter*, 451 F.3d at 1204. Beverage's only challenge to DHHA's motion is that the negligent misrepresentation claim DHHA seeks to add would be futile. For this reason, and because none of the other factors for refusing leave are "apparent or declared," *see Foman*, 371 U.S. at 182, I confine my analysis to whether the negligent misrepresentation claim would be futile. I conclude that it would not.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001). Beverage argues that the amendment would be futile because it could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

To survive such a motion, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. When deciding a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 129 S.Ct. at 1949.

In evaluating a Rule 12(b)(6) motion, I may consider "not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted). "The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). Here, the Plan is such a document.

Beverage marshals five arguments for why the amendment could not withstand a motion to dismiss. Three home in on the elements of a negligent misrepresentation claim. One asserts that ERISA preempts the claim. The last contends that Rule 9(b)'s heightened pleading standard applies in lieu of Rule (8)(a). This last argument is where I begin.

### 1. Fed. R. Civ. P. 8(a) or 9(b)

Beverage contends that Rule 9(b), not Rule 8(a), applies to the negligent misrepresentation claim and that the claim cannot meet Rule 9(b). Rule 8(a) prescribes the pleading requirements for most claims. It requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). By contrast, Rule 9(b) requires that "a party must state *with particularity* the circumstances *constituting fraud or mistake*." Fed. R. Civ. P. 9(b) (emphases added). This standard requires the complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citation omitted). The rule's purpose is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . ." *Id.* (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)).

As the parties note, whether Rule 9(b) applies to negligent misrepresentation claims divides the circuit courts of appeals. *Compare, e.g.*, *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (concluding that Rule 9(b) applies to the claim), *and Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (same); *with Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (holding Rule 9(b) does not apply to claim), *and Baltimore Cnty. v. Cigna Healthcare*, 238 Fed. App'x 914, 921-22 (4th Cir. 2007) (same). The issue similarly splits this district court. *Compare Gunningham v. Std. Fire. Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 4377451, at *2 (D. Colo. Sept. 18, 2008) (applying Rule 9(b) to claim), *with Conrad v. Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1182-83 (D. Colo. 2009) (concluding Rule 9(b) does not apply to claim). The Tenth Circuit has not decided the issue.

I conclude that Rule 9(b) does not apply to the negligent misrepresentation claim before me. The crux of the claim is that Beverage failed to use reasonable care or competence in obtaining and communicating information concerning Hood's eligibility. This rings not of fraud but negligence. *See, e.g.*, *Bloskas v. Murray*, 646 P.2d 907, 914 (Colo. 1982). The claim should thus be governed by Rule 8(a). *See Conrad*, 652 F. Supp. 2d at 1183; *see also City of Raton v. Ark. River Power. Auth.*, 600 F. Supp. 2d 1130, 1143 (D.N.M. 2008) ("With respect to rule 9(b)'s scope, a court should require parties to plead a cause of action with particularity when that cause of action contains allegations grounded in fraud. . . . On the other hand, claims based on negligent or innocent misrepresentation, to the extent those claims do not require proof of fraud, may be pled in accordance with the more relaxed standards of rule 8(a).") (citing 2 James Wm. Moore, Jeffrey A. Parness, & Jerry Smith, Moore's Federal Practice § 9.03(1)(d), at 9–21 (3d ed. 2008)); *Vess v. Ciba-*

8

*Geigy Corp. USA*, 317 F.3d 1097, 1104-05 (9th Cir. 2003) ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)").

Moreover, the general tenor of the complaint weighs against applying Rule 9(b).  This is because none of the causes of action or allegations implicate fraud.  *See, e.g.*, *Gunningham*, 2008 WL 4377451, at *2 (where the court held that Rule 9(b) applies to negligent misrepresentation claim, the plaintiff alleged in support of that claim "that the defendants concealed and failed to disclose certain facts relevant to the plaintiff's claims for loss of rental income and loss of property"), *and Benchmark Electronics Capital Corp. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (stating that "[a]lthough Rule 9(b) by its terms does not apply to negligent misrepresentation claims," it will apply the rule to when the negligent misrepresentation claim is based on the same set of facts as a fraud claim).  For these reasons, I conclude that Rule 9(a) does not apply to this particular negligent misrepresentation claim.

## 2. Misrepresentation

Beverage states that it "cannot be held liable for statements it did not make."  It asserts that at "no point [in the second amended complaint] does DHHA allege that Beverage [] made any statements directly to DHHA" and, further, that the second amended complaint does not "provide any factual allegations regarding exactly what was said by whoever said it."  In so doing, it contends that DHHA insufficiently alleges the second element of a negligent misrepresentation claim. That claim under Colorado law requires sufficiently alleging the following:

> (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

*Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (citing *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank of Denver, N.A.*, 892 P.2d 230, 236-38 (Colo. 1995)).

Negligent misrepresentation does *not* require privity between the parties; Beverage may be liable even if it did not give the information directly to DHHA.  *See Mehaffy*, 892 P.2d at 236. Additionally, the allegations in the second amended complaint concerning the misrepresentation meet Rule 12(b)(6)'s scrutiny.   Paragraph 11 avers that DHHA solicited and received hospital preadmission authorization from Principal for Hood's stay on March 24, 2009, and that Principal repeatedly preauthorized additional days for Hood's stay thereafter.  The second amended complaint further alleges that Beverage represented to Principal that Hood was a participant in the Plan and was eligible for coverage thereunder.  The Plan supports this allegation.  It clearly explains that Beverage, as the Plan's Administrator, "has complete discretion . . . to determine eligibility for benefits, and to determine the type and extent of benefits, if any, to be provided."  Doc #25 at 003. Principal processed claims. *Id.*; 2d Am. Compl. ¶ 8.  Principal later told DHHA that Hood was not covered.

These allegations, when read with the rest of the complaint, elevate the claim "above the speculative level."   *See Twombley*, 550 U.S. at 555.   First, there are enough factual allegations–which must be taken as true–to support the reasonable inference that Beverage itself represented that Hood was covered.  And again, that representation did not have to be conveyed directly to DHHA.  *See Mehaffy*, 892 P.2d at 236.  Alternatively, the Plan itself and other facts alleged generate the reasonable inference that Principal was Beverage's agent and was acting in that role when it represented to DHHA that Hood's care was covered.  This would also sufficiently state the claim against Beverage as principal.  *See, e.g., Life Investors Inc. Co. of America v. Smith*, 833

10

P.2d 864, 868 (Colo. App. 1992) ("The acts or statements of an agent performed within the scope of his real or apparent authority are binding upon the principal, regardless of whether the principal has actual knowledge of the agent's act.").

Beverage's assertion that the complaint must contain detailed allegations of who, what, and when asks for more than 12(b)(6) and Rule 8(a) require. Rule 8 "does not require 'detailed factual allegations.' " *Iqbal*, 129 S.Ct. at 1949. DHHA tenders the requisite "further factual enhancement" to withstand a Rule 12(b)(6) motion. *See id.*

### 3. Justifiable, Detrimental Reliance

Beverage next argues that the second amended complaint fails to sufficiently plead that DHHA justifiably relied on the misrepresentation that Hood was indeed covered under the Plan. Furthermore, Beverage contends that DHHA's own mission statement "makes clear that [DHHA] did not rely on any alleged misrepresentation."

The second amended complaint sufficiently pleads that DHHA justifiably and detrimentally relied on the representation concerning Hood's coverage.  Again, DHHA avers in the second amended complaint that Denver Health solicited and received hospital preadmission authorization from Principal for Hood's stay–that is, it was told that Hood was covered–on March 24, 2009, and that Principal repeatedly preauthorized additional days for Hood's stay in the weeks thereafter. 2d Am. Compl. ¶ 11.  DHHA further alleges that these representations induced Denver Health to continue providing Hood medical care.  Furthermore, because of those representation, DHHA did not seek an alternative third party payor for Hood's care.  These are facts I must assume to be true. The reasonable inference therefrom is that DHHA was left responsible for the $750,000 expense–unequivocally a detriment.  These allegations are more than mere "labels and conclusions"

or "a formulaic recitation of the elements." *See Iqbal*, 129 S.Ct. at 1949.  They instead allow me to draw the reasonable inference that DHHA indeed detrimentally relied on the representations that Hood was covered. *See id.* (quoting *Twombly,* 550 U.S. at 556).

Beverage's Exhibit A purports to be a print of out a webpage from of DHHA's website.  This webpage states that DHHA's mission is, in part, to "[p]rovide the highest quality health care . . . regardless of ability to pay." *See* Beverage's Resp. Ex. A.  According to Beverage, this mission statement demonstrates that Denver Health would have treated Hood regardless of coverage, so there was no reliance. Assuming, *arguendo*, that I may consider the exhibit, it does not establish that DHHA did not detrimentally rely on the representations that Hood was covered.  Beverage assumes that DHHA's conduct actually comports with that mission.  This has not been shown. Moreover, as DHHA explains, "[c]hanging a patient's medical care in duration, scope, or location is not the only way in which Beverage's misrepresentations could have affected DHHA's course of action with respect to Mr. Hood."  Indeed, DHHA alleges that because it was told that Hood was covered under the Plan, it did not seek an alternative third party payor for Hood's care. Now it is left holding the $750,000 bill for that care.

### 4. Reasonable Care

Beverage circles back to the second element by contending that it had no duty as an employer or as the Plan's Administrator to exercise reasonable care or competence in obtaining information regarding Plan eligibility.

This argument obfuscates the issue before me. The question is whether DHHA's second amended complaint states a claim for negligent misrepresentation that could withstand a Rule 12(b)(6) motion.  To do that, DHHA must plausibly allege that Beverage, in the course of its

business, made a misrepresentation of a material fact, without reasonable care or competence in obtaining or communicating the information. *Mehaffy*, 892 P.2d at 236. DHHA does that. The second amended complaint avers that Hood and Intarakamhang submitted an application for domestic partner coverage for Hood under the Plan and that the application was approved and Hood was enrolled. It also states that Beverage did not require Hood or Intarakamhang to produce any documentation, sign any releases to obtain records, or otherwise conduct any underwriting procedures concerning Hood's eligibility. It was later represented to DHHA on multiple occasions that Hood was covered, but, ultimately, that he was uncovered. Assuming these facts to be true, as I must, they buoy the assertion that Beverage (or Principal acting as its agent) failed to exercise reasonable care or competence in obtaining or communicating Hood's coverage "above the speculative level." *Twombley*, 550 U.S. at 555. This is all that is required at this stage.

Beverage's policy arguments on this point are also unpersuasive. It argues that a holding that a plan administrator has the duty to investigate and verify whether an applicant meets every coverage requirement "is an impossible situation that would add incredible administrative costs to health care administration." I need not address this argument because I make no such holding, nor do I demarcate the contours of reasonable care in a negligent misrepresentation case in this context.

### 5. ERISA-Preemption

Beverage lastly argues that ERISA preempts the negligent misrepresentation claim. ERISA's preemption clause states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Section 1144(b)(2)(A), however, states that "nothing in this subchapter shall be construed to exempt

13

or relieve any person from any law of any State which regulates insurance, banking, or securities." This provision is known as ERISA's savings clause. Notwithstanding the savings clause, the preemption clause is "deliberately expansive" and has a "broad sweep." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 47 (1987). "The phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Pilot*, 481 U.S. at 47 (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). The Supreme Court has emphasized that preemption is not limited to state laws specifically designed to affect employee benefit plans. *Shaw v. Delta Air Lines*, 463 U.S. 85, 98 (1983). Instead, it also encompasses common law tort and contract claims. *Pilot*, 481 U.S. at 47-48. In sum, if a state law claim "relates to" an employee benefits plan, it is preempted, but if the law "regulates insurance," the savings clause saves it from preemption. *Id.* at 45.

Clearly Hood could not bring the claim. *See Straub v. Western. Union. Telegraph Co.*, 851 F.2d 1262, 1263-64 (10th Cir. 1988) (holding that ERISA preempts state law claims for breach of contract and negligent misrepresentation claim brought by an ERISA-plan participant or beneficiary); *see also Pilot*, *supra*. But DHHA brings the claim on its own behalf as a third party health services provider. This makes the preemption question more difficult. The Tenth Circuit has not addressed the specific issue of whether ERISA preempts a negligent misrepresentation claim brought by a third party health services provider. I therefore look for guidance elsewhere.

*Memorial Hospital Systems v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990), presented facts very similar to those before me. There, Noffs, Inc. ("Noff"), provided health care benefits for its employees and their dependents through a group health insurance policy purchased

from and administered by defendant Northbrook Life Insurance Company ("Northbrook"). *Id.* Gloria Echols, the wife of a Noff employee, sought care at Memorial Hospital. *Id.* at 238. The hospital called Noff to verify Echols's coverage, and Noff confirmed that she was covered. *Id.* The hospital then admitted Echols and treated her for two months at a cost of more than $100,000. *Id.* When the hospital submitted its bill, Northbrook informed it that Echols was ineligibile and denied the claim. *Id.* The hospital sued the employer and Northbrook, alleging among other claims a violation of Texas Insurance Code article 21.21, which the court characterized as a Texas codification of negligent misrepresentation. *See id.*

The *Memorial* court held that ERISA did not preempt the negligent misrepresentation claim. It found that the claim was not one which Congress intended ERISA to regulate:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. *A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.*

*Id.* at 246 (emphasis added). The *Memorial* court also concluded that preemption does not comport with Congress's purpose for ERISA. *Id.* at 245. Congress enacted ERISA to protect the interests of employees and beneficiaries covered by a benefit plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). The court reasoned that preemption in a third party health care provider case would defeat rather than promote this goal. *Memorial*, 904 F.2d at 247. The "commercial realities" of the health care industry require that health care providers be able to rely on insurers' representations as to coverage. *Id.* at 246. But "[i]f providers have no recourse under either ERISA

15

or state law in situations" where a provider has relied on assurances that there is coverage, and that coverage is later disclaimed, "providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries-or impose other inconveniences-before treatment will be offered." *Id.* at 247. "This," *Memorial* explained, "does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA." *Id.* at 247-48. The court also reasoned that health care providers were beyond ERISA's scope. *See id.* at 248-49.

The facts in *Memorial, supra,* were "very similar" to those presented in *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994). In *Lordmann,* the Eleventh Circuit reviewed *Memorial*, found it persuasive, and likewise held that ERISA does not preempt a health care provider's negligent misrepresentation claim against an insurer.

While the Tenth Circuit has not addressed this particular situation, it has confronted an analogous one. In *Hospice of Metro Denver, Inc. v. Group Health Insurance, Inc.*, 944 F.2d 752, 753 (10th Cir. 1991), an infant was admitted to hospice for care and remainined there for approximately four months. The infant's father's employer provided group health care benefits from Blue Cross for its employees. *Id.* Prior to admitting the infant, hospice contacted Blue Cross about insurance coverage, and Blue Cross informed hospice that coverage was available. *Id.* Blue Cross repeatedly assured hospice during the infant's stay that the care was covered and that payment would be forwarded. *Id.* After the infant was discharged, Blue Cross denied coverage and payment, citing the health care policy's preexisting conditions provisions. *Id.* Hospice sued in its own right, alleging, *inter alia*, promissory estoppel. *Id*. Blue Cross challenged the claim as preempted by ERISA. *Id.*

16

The Tenth Circuit held that ERISA did not preempt a health care provider's promissory estoppel claim asserted on its own behalf.  The court began by tracing the expansive contours of ERISA-preemption.  But it also stated that "ERISA does not preempt claims that are only tangentially involved with a benefit plan." *Id.* at 754 (quoting *Settles v. Golden Rules Ins. Co.*, 927 F.2d 505, 509 (10th Cir. 1991)).  Similarly, it explained that "state actions which affect plans in 'too tenuous, remote, or peripheral a manner,' will not be preempted as a law relating to the plan."  *Id.* (quoting *Shaw*, 463 U.S. at 100 n.21).  Importantly for the instant matter, the court relied heavily on *Memorial*'s approach and rationale to reach its conclusion.  *Id.* at 754-55.  It agreed that under these circumstances, a provider's subsequent civil remedy against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan.  *Id.* And the promissory estoppel claim, like the claim in *Memorial*, arose not from coverage under an ERISA plan, but rather, precisely because there is no ERISA plan coverage.  *Id.*  The court was also concerned with leaving hospice without recourse.  *Id.* at 755.  Furthermore, the court agreed with *Memorial* that "[d]enying a third-party provider a state law action based upon misrepresentation by the plan's insurer in no way furthers the purposes of ERISA." *Id.* at 756.  For these reasons, the Tenth Circuit found that preempting the claim would "stretch the 'connected with or related to' standard too far."  *Id.*

These three cases are cognate to the one before me. Finding their approach and conclusions applicable and persuasive, and for the reasons they discussed, I conclude that ERISA would not preempt DHHA's negligent misrepresentation claim.

For the foregoing reasons, I conclude that the amendments that DHHA's motion seeks would not be futile.  I therefore grant DHHA's motion and accept its second amended complaint.

### III. Principal's Motion

Principal's motion asks that I dismiss with prejudice the three claims in DHHA's *first* amended complaint.  Those three  claims were the § 1132(a)(1)(B) claim; the Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 claim; and the promissory estoppel claim.  Because I granted DHHA's motion and accepted its second  amended complaint in Part II, *supra*, Principal's arguments against the first two claims are moot.  This is because the second amended complaint clarifies that DHHA levies the § 1132(a)(1)(B) claim against the Plan and not Principal.  The second amended complaint also dropped the Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 claim.  I therefore decline to discuss and deny as moot the portions of Principal's motion pertinent to those two claims.

But Principal's arguments for dismissing the promissory estoppel claim remain. The accepted second amended complaint does not add any new allegations pertaining to that claim. Hence, I examine the exact same promissory estoppel claim in response to Principal's motion; I just look at the second amended complaint to do so.  For the reasons herein, I deny the motion.

### A. Standard of Review

Here, I incorporate by reference the Rule 12(b)(6) standard of review I explicated in Part II.B, *supra*.  The core principle is that to withstand a motion to dismiss under Rule 12(b)(6), a complaint  "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  This standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### B. Discussion

Principal levies what appears to be three arguments for why DHHA does not state the claim. I address these in turn and conclude that DHHA satisfactorily alleges a promissory estoppel claim.

### 1. Preemption

Principal argues in its motion that regardless of whether DHHA brings the promissory estoppel as Hood's assignee or in its own right, ERISA preempts it. I delineated the schema for ERISA-preemption in Part II.B.5, *supra*. I incorporate it by reference here.

A promissory estoppel claim brought by a plan participant or beneficiary that "relates to" a benefit plan is indeed preempted by ERISA. *See Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043 (10th Cir. 1992); *Averhart v. US West Mgmt. Pension Plan*, 46 F.3d 1480 (10th Cir. 1994); *Maez v. Mountain States Tel. and Tel.*, *Inc.*, 54 F.3d 1488 (10th Cir. 1995). A different rule exists, however, when a third party provider brings a promissory estoppel claim on its own behalf. *Hospice*, *supra*, held that ERISA did not preempt a promissory estoppel claim that a health care provider brought on its own behalf. 944 F.2d 752; *see* Part II.B.5, *supra*.

DHHA asserts the promissory estoppel claim on its own behalf– *not* as Hood's assignee. The cases Principal cites in support of preemption are thus inapposite. DHHA alleges that Principal, by it words and actions, made a promise to pay for the cost of Hood's care at Denver Health. In support of this statement, DHHA alleges that it solicited and received hospital preadmission authorization from Principal for Hood's hospital stay on March 24, 2009 and that over the next several weeks, Principal continued to preauthorize additional days for Hood's stay on multiple occasions. These promises induced Denver Health to continue providing Hood with care. They also kept Denver

Health from making other arrangements for Medicare or another third party to pay for Hood's care. DHHA now seeks recovery from the Principal as promisor.

*Hospice*'s facts are patently akin to those before me. *See* Part II.B.5, *supra* (discussing facts of *Hospice*). Following *Hospice*, I conclude that ERISA does not preempt DHHA's promissory estoppel claim. Principal does not proffer any authority for why DHHA is precluded from bringing claims as Hunt's assignee in conjunction with claims in its own right.

### 2. Enforceability Against Principal

Principal next asserts that the claim should be dismissed because only the Plan is liable for the benefits alleged and any promises Principal allegedly made were made as the Plan's agent.

The elements of a promissory estoppel claim are the following: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995). "Promissory estoppel is an extension of the basic contract principle that one who makes a promise must be required to keep it." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).

Taking as true the factual allegations in the second amended complaint, and drawing all reasonable inferences therefrom in a light most favorable to DHHA, the complaint satisfactorily alleges these elements. It alleges the "[t]hreadbare recitals of the elements of" promissory estoppel. *See Iqbal*, 129 S.Ct. at 1949; *see* 2d Am. Compl. ¶¶ 33-37. More importantly, it supports them with factual averments. The second amended complaint alleges that Denver Health solicited and received preadmission authorization from Principal for Hood on March 24, 2009, and that Principal

preauthorized additional days for Hood's stay multiple times over the nest several weeks. *See* 2d

Am. Compl.¶ 11.  As a result of these authorizations,  Denver Health continued rendering care to

Hood.  Denver Health also did not begin making arrangements for Medicare or a third party to pay

for Hood's care.  Principal then denied coverage and payment.  These factual allegations "raise [the]

right to relief above the speculative level." *Twombley*, 550 U.S. at 555; *see Hospice*, 944 F.2d at

753, 754 (stating that, under Colorado law, the following allegations "state[d] a promissory estoppel

claim" against Blue Cross: prior to hospice admitting a patient, Blue Cross told hospice that the

patient was covered; during course of the patient's care, Blue Cross repeatedly assured hospice that

the patient was covered; but Blue Cross ultimately refused coverage and payment).

Principal does not cite *any* legal authority in support of the proposition that it is immune

from this claim as an agent, save the Plan. *See, e.g.*, *Broderick Inv. Co. v. Strand Nordstrom Stailey

Parker, Inc.*, 794 P.2d 264 (Colo. App. 1990) (promissory estoppel claim alleged against

independent insurance agent in relation to Aetna Insurance Company insurance policy certificate).

DHHA, however, does not seek to hold Principal liable for breach of the Plan.  Rather, DHHA seeks

to hold Principal liable for the promises it allegedly made.

Because DHHA's allegations raise its promissory estoppel claim "above the speculative

level," *see Twombley*, 550 U.S. at 555, and DHHA fails to provide any legal authority that the

standard promissory estoppel elements are inapplicable or deficiently alleged here, this argument

fails to establish that the Third Claim must be dismissed under Rule 12(b)(6).

### 3. Express Claim to Payment

Lastly, Principal contends that promissory estoppel is not available in situations where an

express claim for payment exists.  It argues that because Hood assigned his right to benefits to

DHHA, DHHA can recover benefits under the Plan and need not–and apparently cannot–resort to a claim for promissory estoppel.

Principal's argument is devoid of legal support.  Plaintiffs may bring claims for breach of contract and promissory estoppel.  *See Marquardt*, *supra*.  Contrary to Principal's postulate, DHHA lacks an express claim for payment.  *See* Part IV, *infra*.  But DHHA may nevertheless be able to recover on a promissory estoppel claim. *See Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987).  That DHHA brings the § 1132(a)(1)(B) against the Plan does not preclude bringing a promissory estoppel claim against Principal.

Accordingly, I deny Principal's motion in so far as it seeks dismissal of the promissory estoppel claim.  And, as previously stated, I deny as moot the portions of the motion seeking dismissal of the § 1132(a)(1)(B) claim and the Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 claim.

### IV. Beverage Distributors' Motion

Beverage Distributors moves pursuant to Rule 12(c) to dismiss DHHA's § 1132(a)(1)(B) claim from the *first* amended complaint.  In Part II, *supra*, I granted DHHA's motion and accepted its second amended complaint.  The second amended complaint retains the § 1132(a)(1)(B) claim but clarifies that DHHA asserts it against the Plan. That is the only material change to the claim. I thus feel comfortable directing Beverage Distributors' motion at the § 1132(a)(1)(B) claim in the *second* amended complaint. For the reasons below, I grant the motion.

#### A. Standard of Review

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) may be made any time after the pleadings are closed. Fed. R. Civ. P. 12(c). Such a motion "is designed to dispose of cases where material facts are not in dispute and judgment on the merits can be rendered

based on the content of the pleadings and any facts of which the will take judicial notice." *Hamilton v. Cunningham*, 880 F. Supp. 1407, 1410 (D. Colo. 1995).

I treat a motion for judgment on the pleadings under Rule 12(c) as a motion to dismiss under Rule 12(b)(6). *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir.1992). The standards delineated in Parts II.B and III.A, *supra*, are thus applicable; I incorporate them here. Recall that while utilizing this standard, I "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith*, 561 F.3d at 1098 (quoting *Alvarado*, 493 F.3d at 1215). I may also take judicial notice of and consider court and other public records without converting the motion into one for summary judgment under Rule 56. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004); *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

### B. Discussion

Beverage Distributors' argues that the § 1132(a)(1)(B) claim should be dismissed on two grounds. First, Hood never had standing to sue because he was never a "participant or beneficiary;" therefore, as Hood's assignee, DHHA lacks standing to bring the claim. Second, Hood failed to exhaust his administrative remedies. I begin with whether DHHA has standing to bring the § 1132(a)(1)(B) claim and determine that it does not. I thus need not and do not address the second argument.

In order to bring a suit, a plaintiff must show that it has standing to bring its claim or claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In a § 1132(a)(1)(B) case, "only plaintiffs who are properly considered 'participants' or 'beneficiaries' have standing to sue."

*Chastain v. AT&T*, 558 F.3d 1177, 1181 (10th Cir. 2009); *accord Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1222 (10th Cir. 2011) ("[I]f the party seeking state-court relief is not a 'participant or beneficiary' under an ERISA plan, he or she could not have brought suit under § 502(a)(1)(B) of the statute . . . ."); *see* 29 U.S.C. § 1132(a)(1) ("A civil action may be brought–(1) by a participant or beneficiary . . . ."). Stated differently, if the plaintiff does not establish that he was a participant or beneficiary, he does not standing to enforce his ERISA claim. *See, e.g.*, *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990) ("Because Mr. Mitchell failed to prove that he was still a participant in the Plan, it is inescapable that he did not have standing to seek enforcement of his ERISA claims."). Because standing is also a subject matter jurisdictional requirement, *see Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1160 n.14 (10th Cir. 2004), if the plaintiff lacks standing, a court lacks jurisdiction. *Hansen*, 641 F.3d at 1223. Thus, as threshold matter, DHHA must demonstrate that Hood was either a participant or beneficiary under the Plan.

DHHA does not allege that Hood was a "participant" under the Plan. Nor does it allege facts that would give rise to that finding. *See* 29 U.S.C. § 1002(7) ("The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.). It instead alleges that Intarakamhang was the participant. For standing, then, DHHA must establish that Hood was a beneficiary.

ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Thus, to determine whether Hood was a "beneficiary," I look to the Plan. Beverage

24

Distributors' attached the Plan to its motion.  *See* Beverage Distributors' Mot. Ex. A.  (I reiterate parenthetically that because DHHA references and relies upon the Plan in its second amended complaint, and it does not dispute the exhibit's authenticity, I may consider the Plan.)  It provides that medical coverage is available only for "members" and their "dependants."  *See id.* at 9, 15. Only Beverage employees can be "members."  *Id.* at 84. The Plan defines "dependant" as a member's "spouse, if [the] spouse: is a person of the opposite sex to whom [the member] [is] legally married; is not in the Armed Forces of any country; and is not covered under this plan as a Member."  *Id.* at 80.

DHHA must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.  Because I employ a Rule 12(b)(6) standard of review, the second amended complaint must contain sufficient factual matter, accepted as true, to plausibly show that Hood was a "dependent" under the terms of the Plan. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

DHHA does not allege in its second amended complaint that Hood was a "dependant" or "beneficiary" under the Plan.  Nor does it allege that Intarakamhang and Hood were legally married. It instead avers that Hood and Intarakamhang "believed that they had established a domestic partnership in July 2006" and that they "submitted an application for domestic partnership coverage for Hood."  By its terms, the Plan does not consider a member's domestic partner a "dependent." Those terms do not become malleable under my review.  As the Supreme Court recently explained,

> [w]here does § 502(a)(1)(B) grant a court the power to *change* the terms of the plan as they previously existed? The statutory language speaks of "*enforc[ing]* " the "terms of the plan," not of *changing* them. 29 U.S.C. § 1121(a)(1)(B) (emphasis added). . . . [W]e have found nothing suggesting that the provision authorizes a court to alter those terms . . . .

*CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1876-77 (2011). Guided in part by *CIGNA*'s language, DHHA's allegations fail to "nudge" the requisite showing that it has standing "across the line from conceivable to plausible." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). DHHA therefore insufficiently shows that it has standing to enforce its § 1132(a)(1)(B) claim.

My conclusion that Hood was not a "dependant" under the Plan is bolstered by Beverage Distributors' additional exhibits. Exhibits B, C, and D are Colorado state court records. As such, I may consider them. *See Grynberg*, 390 F.3d at 1279 n.1; *see also Van Woudenberg*, 211 F.3d at 568, *abrogated on other grounds by McGregor*, 248 F.3d 955. These exhibits show that Hood was married to Sandra SanMiguel from 2001 through November 2010. *See* Beverage Distribution's Mot. Ex. B-D. DHHA alleges that Hood and Intarakamhang submitted their application for Hood's coverage under the Plan on June 25, 2008, and that DHHA rendered its care to Hood in Spring 2009. Both of these occurred while Hood was still married to SanMiguel.

Under Colorado law, an individual cannot be "married" to two different people simultaneously. *See* Colo. Rev. Stat. § 14-2-110(1)(a) ("The following marriages are prohibited: (a) A marriage entered into prior to the dissolution of an earlier marriage of one of the parties . . . ."). This applies equally to common law marriages. *See id.* § 109.5(1)(b); *People v. Maes*, 609 P.2d 1105 (Colo. Ct. App. 1979) (where the defendant's prior, undissolved marriage precluded his asserted subsequent common law marriage).

Applying this law to the facts before me shows that under no set of facts was Hood a dependent under the Plan. Even if I were to contemplate whether Hood and Intarakamhang's alleged domestic partnership constituted a common law marriage for purposes of "dependent" status, DHHA's standing showing still falls short. Because Hood was still married to SanMiguel when his

26

application for coverage under the Plan was submitted and when he received his treatment, he could not have been Intarakamhang's "spouse" under Colorado law, which means he could not have been Intarakamhang's "spouse" under the Plan.  Therefore, Hood was not a "dependant" under the Plan.

In its response, DHHA does not dispute whether Hood was a "dependent" or his marriage to SanMiguel.  Instead, it casts the standing issue aside and argues that the issue before me is whether Beverage Distributors' rescission was arbitrary and capricious.

I need not survey DHHA's position.  Standing is a matter of much more import than DHHA's treatment suggests.  Standing is "not mere[ly] [a] pleading requirement[] but rather *an indispensable part of the plaintiff's case*." *Lujan*, 504 U.S. at 561 (emphasis added); *see also Chastain*, *supra*; *Hansen*, *supra*; *and Mitchell*, *supra*.  If DHHA lacks standing, I lack jurisdiction to adjudicate the § 1132(a)(1)(B) claim, which would include determining whether the rescission was arbitrary and capricious. *See Felix,* 387 F.3d at 1160 n.14; *Hansen*, 641 F.3d at 1223.  DHHA attempts to put the cart before the horse. DHHA has not established that Hood was a member or dependent under the Plan.  As a corollary, it has not established that it Hood was a participant or beneficiary. It is therefore "inescapable" that DHHA does not have standing to bring the § 1132(a)(1)(B) claim. *Mitchell*, 896 F.2d at 474; *accord Hansen*, 641 F.3d at 1222.

Accordingly, I conclude that DHHA lacks standing to bring the § 1132(a)(1)(B) claim.  Consequently, I grant Beverage Distributors' motion.

## V. Conclusion

For the reasons set forth above, IT IS ORDERED that:

1) Principal's Motion to Dismiss **[Docs # 5 and 6]** is DENIED in so far as it seeks dismissal of the promissory estoppel claim and is DENIED as moot in so far as it seeks dismissal of the § 1132(a)(1)(B) claim and the Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 claim;

2) DHHA's Motion for Leave to Amend Complaint **[Doc # 31]** is GRANTED, and its second amended complaint tendered therewith is accepted; and

3) Beverage Distributors' Motion for Judgement on the Pleadings **[Doc # 34]** is GRANTED.

These orders leave the case to proceed with two claims and two defendants: (1) the negligent misrepresentation claim against Beverage, and (2) the promissory estoppel claim against Principal.

Date: February __8__, 2012 in Denver, Colorado.

BY THE COURT:


____s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE
