IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-01407-LTB-KLM

DENVER HEALTH AND HOSPITAL AUTHORITY,

    Plaintiff,

v.

BEVERAGE DISTRIBUTORS COMPANY, LLC, a Colorado limited liability company;
A PLAN DESIGNED TO PROVIDE SECURITY FOR EMPLOYEES OF BEVERAGE DISTRIBUTORS COMPANY, LLC; and
PRINCIPAL LIFE INSURANCE COMPANY,

    Defendants.
_____

ORDER
_____

This matter is before me on the Motion for Attorney for Attorneys' Fees and Costs **[Doc #86]** filed by Defendants Beverage Distributors Company, LLC ("Beverage"), and A Plan Designed to Provide Security for Employees of Beverage Distributors Company, LLC (the "Plan") (together, "Beverage Distributors"). After considering the parties' arguments, for the reasons below, I DENY the motion.

**I. Background**

This motion flows from my order (the "Order") granting Beverage Distributors' motion for judgment on the pleadings. *See* Mem. Op. and Order, February 8, 2012, Docket # 55 (hereinafter, "Order"). For the instant motion, I provide only a summary of the pertinent facts and instead rely on and incorporate by reference the full background detailed in the Order. *See* Order at 2-4.

On April 4, 2011, Plaintiff Denver Health and Hospital Authority ("DHHA") filed suit in state court against Beverage Distributors and Principal Life Insurance Company ("Principal")

seeking compensation for unpaid medical services it provided to Terrance Hood in 2009. In its first amended complaint, DHHA asserted, *inter alia*, a claim against Beverage Distributors for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The Defendants removed the case to this Court. Next came three motions: Principal's motion to dismiss; DHHA's motion for leave to amend its first amended complaint; and Beverage Distributors' motion for judgment on the pleadings.

In its motion for judgment on the pleadings, Beverage Distributors argued that DHHA lacked standing to bring its § 504(a)(1)(B) claim because it failed to sufficiently establish that Hood was a participant or beneficiary under the Plan. I agreed. I first affirmed that DHHA had to show standing to bring its § 504(a)(1)(B) claim. Order at 23. Citing ERISA and controlling precedent, I determined that this meant sufficiently establishing that Hood–who had allegedly assigned his right to benefits to DHHA–was a beneficiary under the Plan. *See* Order at 23. Per ERISA and the terms of the Plan, this required demonstrating that Hood was a "dependant" under the Plan. *Id.* at 24. This, in turn, meant showing that he was the legally married spouse of Junnapa Intarakamhang, a Beverage employee who was covered under the Plan. *Id.* DHHA, however, did not so allege. *Id.* at 25. It instead alleged that Hood and Intarakamhang believed that they had established a "domestic partnership" in July 2006. *Id.* Because a domestic partner was not a "dependant" under the Plan, I concluded that "DHHA's allegations fail[ed] to nudge the requisite showing that it has standing across the line from conceivable to plausible." *Id.* (internal quotations omitted).

I also considered Colorado court records that Beverage Distributors submitted. *Id.* at 25. They showed that Hood was married to another woman from 2001 to 2010, during which he allegedly established the domestic partnership with Intarakamhang, submitted his application for

2

coverage under the Plan, and had been treated by DHHA. *Id.* at 25-26. I reasoned that even if a domestic partnership could constitute a legal marriage for purposes of making him a covered "spouse" under the Plan, Hood's marriage to another woman precluded him from being married to Intarakamhang because in Colorado an individual cannot be married to two people simultaneously. Order at 26. I thus concluded that "under no set of facts was Hood a dependent under the Plan." *Id.*

Accordingly, in the Order, I granted Beverage Distributors' motion and dismissed DHHA's § 504(a)(1)(B) claim. *Id.* at 27. I also denied Principal's motion and granted DHHA's motion. *Id.* This left the case to proceed with DHHA's negligent misrepresentation claim against Beverage and its promissory estoppel claim against Principal. *Id.*

Then, on August 7, 2012, the parties filed their stipulation to dismiss state law claims with prejudice. *See* Docket # 83. In it, the parties agreed to dismiss with prejudice all of the remaining claims for relief. *Id.* at 3. They also agreed that each party shall bears its own costs and attorneys' fees stemming from those claims being voluntarily dismissed. *Id.* The parties intended the stipulation to result in judgment against DHHA so that DHHA could appeal my dismissal of its § 504(a)(1)(B) claim, which it has done. *Id.*; *see* Docket ## 88, 90.

Beverage Distributors now moves pursuant to Fed. R. Civ. P. 54(d) to recover $350 in costs and $48,963.23 in attorneys' fees it allegedly expended defending against DHHA's § 504(a)(1)(B) claim. (I note that Beverage Distributors' states that it moves pursuant to Rule 54(b), but this is certainly an error. *Compare* Fed. R. Civ. P. 54(b), *with* 54(d).)

## II. Discussion

### A

The parties agree that 29 U.S.C. § 1132(g)(1) governs the recovery of attorney's fees and costs related to DHHA's § 504(a)(1)(B) claim. Section 1132(g)(1) provides that in an ERISA action "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Id.* Importantly, "a fee claimant need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010). Instead, a court "in its discretion" may award fees and costs under § 1132(g)(1) "to either party" so long as the fee claimant has achieved "some degree of success on the merits." *Id.* at 2152.

It is well-established that whether to grant attorney's under § 1132(g)(1) is "clearly" within my sound discretion and that "the granting of attorney's fees under ERISA is not to be done as a 'matter of course,' but is discretionary in nature." *See, e.g.*, *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir. 1983). In *Gordon*, the Tenth Circuit held that when exercising my discretion under § 1132(g)(1), I should consider the following factors, among others: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* at 109. The Tenth Circuit has also stated that I need not consider each factor and that no single factor is dispositive. *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n.17 (1992). The Supreme Court, however, has clarified that this five factor test is not mandatory. *See Hardt*, 130 S. Ct. at 2158.

In *Hardt*, the Supreme Court reviewed a district court's award of attorney's fees and costs under § 1132(g)(1). 130 S. Ct. 2149. After asking whether the fee claimant was the prevailing party and deciding she was, governing Fourth Circuit law required the district court to examine whether an award of attorney's fees was appropriate using the exact same five factors delineated in *Gordon, supra*. *Compare Hardt*, 130 S. Ct. at 2154-55 n.1, *with Gordon*, 724 F.2d at 109. Upon review, the Court stated that "[b]ecause these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, *they are not required for channeling a court's discretion when awarding fees under this section*." 130 S. Ct. at 2158 (emphasis added). What is required is the showing discussed above: the fee claimant must demonstrate that he has had "some degree of success on the merits." *Id.* The Court noted, however, "that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors . . . in deciding whether to award attorney's fees." *Id.* at 2158 n.8.

**B**

In its instant motion, Beverage Distributors maintains that it should be awarded the attorneys' fees and costs it expended in defending against DHHA's § 504(a)(1)(B) claim. To assess the motion, I must first determine under *Hardt* whether Beverage Distributors is even eligible for a fees and costs award under § 1132(g)(1). *See* 130 S. Ct. at 2152. This means examining whether Beverage Distributors achieved "some degree of success on the merits" with respect to DHHA's § 504(a)(1)(B) claim. *Id.* There is no dispute that it did. Accordingly, I conclude that Beverage Distributors is eligible for a fees and costs award under § 1132(g)(1).

The inquiry thus turns to whether I should exercise my discretion to award Beverage Distributors its fees and costs. The parties disagree as to how I should analyze this question.

Beverage Distributors urges that, in light of *Hardt*, I should exercise my discretion under § 1132(g)(1) to eschew *Gordon*'s five-factor test. It insists that the better approach is to consider only *Gordon*'s third and fifth factors. DHHA disagrees. It contends that *Gordon*'s five-factor test applies.

I conclude that DHHA offers the better approach. Although *Gordon*'s five-factor test is not mandatory, *Gordon* and *Hardt* can nevertheless sit comfortably together simply by doing what I have done. *See, e.g.*, *Tomlinson v. El Paso Corp.*, 2011 WL 1158637, *2 (D. Colo. Mar. 30, 2011) (unpublished) (concluding that after the threshold determination that a party is eligible for a fee award using *Hardt*, "I may refer to whatever factors may be appropriate in the exercise of my discretion to determine whether, in light of this success, an award should be made. Given the venerable history of the five *Gordon* factors identified above, I will refer to them in determining whether to award fees to Defendants."). Per *Hardt*, I first ask whether a fee claimant has achieved "some degree of success on the merits." 130 S. Ct. at 2152. If it has, I may then exercise my discretion under § 1132(g)(1) to decide whether a fee award should be granted. *See id.* at 2158 n.8. To help guide my discretion, I can–and indeed "should"–use *Gordon*'s five-factor test. *Gordon*, 724 F.2d at 109. In this way I can hew to both cases. This approach also anchors my discretion under § 1132(g)(1), rather than leaving it adrift. Furthermore, Beverage Distributors fails to provide any compelling reason to jettison 60 percent of the *Gordon* five-factor test. I therefore consider whether to award Beverage Distributors its fees and cost using *Gordon*'s five-factor test.

### 1

I first consider the degree of DHHA's culpability or bad faith. *Gordon*, 724 F.2d at 109. Beverage Distributors asserts that even if DHHA did not know about Hood's marriage at the time it instituted suit, it became aware of the fact early because Beverage Distributors provided it with

Hood's marriage certificate and divorce filings soon after litigation commenced. Beverage Distributors insists that DHHA nevertheless persisted with what it knew to be a "meritless" § 504(a)(1)(B) claim. *See* Def.s' Mot. for Attorneys' Fees and Costs, Docket # 86 at 8, 10. To Beverage Distributors, this evinces DHHA's bad faith.

I disagree. When assessing whether the position a party assumed in litigation was in "bad faith" for purposes of deciding whether to award the opposing party its attorney's fees and costs, the Tenth Circuit has stated that "[b]ad faith means 'dishonesty of belief or purpose.' " *U.S. v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011) (quoting Black's Law Dictionary 149 (8th ed. 2004)) (interpreting the Hyde Amendment, 18 U.S.C. § 3006A Note, which provides that attorney's fees and costs are available to a defendant when the district court finds that the Government's position was "vexations, frivolous, or in bad faith."). Beverage Distributors fails to establish that DHHA was dishonest in bringing or continuing with its § 504(a)(1)(B) claim. It does not show that prior to the Order, DHHA knew that Hood was married to another woman and that this would preclude him from Plan coverage and, consequently, from having standing to bring the § 504(a)(1)(B) claim.

I further note DHHA's argument on appeal. DHHA states that the "foundation" of its § 504(a)(1)(B) claim is that "the rescission of Hood's coverage on the ground that he made misrepresentations pertaining to his eligibility [for coverage under the Plan] was improper." Pl.'s Resp. at 5. It asserts that a proper analysis of its claim would have asked whether the rescission of Hood's coverage was appropriate. *See id*. And on this theory, according to DHHA, the fact that Hood was already married would not have precluded DHHA from bringing its § 504(a)(1)(B) claim. Because I did not analyze the claim that way, DHHA has appealed. While I disagree with DHHA's position, and although the Tenth Circuit may agree with Beverage Distributors that the position

7

lacks merit, one may reasonably infer from this that DHHA honestly believes its § 504(a)(1)(B) claim has merit. By definition, this suggests the absence of bad faith.

For these reasons I conclude that this factor weighs against awarding fees and costs.

**2**

I next consider DHHA's ability to personally satisfy the requested fees and costs award. *Gordon*, 724 F.2d at 109.  On the one hand, while not dispositive, see *McGee*, 953 F.2d at 1209 n.17, DHHA is surely capable of doing so. Its 2011 annual report lists its total net assets at $423,775,882 and its cash and cash equivalents at $46,896,027. *See* Denver Health 2011 Annual Report at 31, *available* at http://www.denverhealth.org/Portals/0/docs/pr/2011-AnnualReport.pdf. This dwarfs Beverage Distributors' roughly $49,000 requested award. On the other hand, DHHA is a political subdivision of the State of Colorado charged with operating the health system for the City and County of Denver, including Denver Health Medical Center ("Denver Health"). *See* Pl.'s Second Am. Compl. ¶ 1. Denver Health is the state's primary safety net institution. As such, it provides billions of dollars in uncompensated care to uninsured, low-income, and vulnerable populations. *See* Denver Health Website, http://denverhealth.org/AboutUs.aspx. As a corollary, satisfying the requested award would diminish Denver Health's ability to provide that important service–albeit slightly. This is something I may consider. *See Gordon* 724 F.2d at 109 ("[W]hen determining whether to award attorney's fees under § 1332(g)(1), the district court should consider these factors *among others*: . . .") (emphasis added). In doing so, I conclude that these considerations offset such that this factor weighs in favor of neither party.

**3**

The third factor is whether awarding attorneys' fees against DHHA would deter others from acting under similar circumstances. *Gordon*, 724 F.2d at 109. Should I construe "similar circumstances" narrowly, I am not persuaded there is any deterrence. Nothing before me suggests that there are other men and women who have applied for and received domestic partner coverage under their partner's ERISA plan and have received medical treatment under that Plan while legally married to someone else. Absent these "similar circumstances," there is nothing to "deter." Nor do I find that awarding fees and costs would deter others if I construe "similar circumstances" more liberally. DHHA alleged that from the beginning of Hood's care, and on multiple occasions in the weeks thereafter, Principal preauthorized Hood's treatment. Order at 2. This led DHHA to continue caring for Hood, ultimately rendering approximately $750,000 in medical services. *Id.* Hood's coverage was rescinded nearly two months later. *Id.* at 3. It is not clear to me that awarding the comparatively small fees and costs here would deter someone from suing to recover the value of the services she rendered when she was essentially told before rendering them that she would be compensated for doing so, especially when their value is not insignificant. Beverage Distributors fails to persuade me otherwise. I therefore conclude that this factor disfavors a fees and costs award.

**4**

The penultimate factor is whether Beverage Distributors sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. *Gordon*, 724 F.2d at 109. It did not. This factor thus weighs against a fees and costs award.

**5**

Lastly, I consider the relative merits of the parties' positions. *Gordon*, 724 F.2d at 109. As stated, in my Order I agreed with Beverage Distributors that DHHA lacked standing to bring its § 504(a)(1)(B) claim. I determined that DHHA had failed to nudge the requisite showing that Hood was a beneficiary across the line from conceivable to plausible and that under no set of facts was Hood a dependent under the Plan. Order at 25, 26. Simply put, then, Beverage Distributors' position as to the § 504(a)(1)(B) claim had much more merit than DHHA's position. This factor thus favors awarding Beverage Distributors' its fees and costs, but the factor is not dispositive. *McGee*, 953 F.2d at 1209 n.17. Nor have I been persuaded to accord it disproportionate weight. I also consider it with the other four factors *supra*.

In doing so, I conclude that, on balance, *Gordon*'s five-factors weigh against a fees and costs award. Three factors disfavor an award, one favors it, and one is neutral. Beverage Distributors does not direct me to a non-enumerated factor that compels a different result.

### III. Conclusion

Accordingly, it is ordered that Beverage Distributors' Motion for Attorney for Attorneys' Fees and Costs **[Doc #86]** is DENIED.

Date: October   30  , 2012, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE